**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FLAGSTAR FINANCIAL & LEASING, LLC
f/k/a SIGNATURE FINANCIAL, LLC,

*Plaintiff,*

-against-

IMAGE RX, INC., and JENNIFER RASCOE,

*Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**A P P E A R A N C E S:**

    Mariam G. Chubinidze, Esq.
    **Hinshaw & Culbertson LLP**
    800 Third Avenue, 13th Floor
    New York, NY 10022
    *Attorney for Plaintiff*

    *No Appearance for Defendants*

**FILED**
**CLERK**

**3/5/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**REPORT AND**
**RECOMMENDATION**

25-cv-05050-GRB-JMW

**WICKS**, Magistrate Judge:

Plaintiff Flagstar Financial & Leasing, LLC f/k/a Signature Financial, LLC ("Plaintiff" or "Flagstar") commenced this action asserting claims for (i) breach of contract against Defendant Image RX, Inc. ("Image RX"), (ii) breach of personal guaranty against Defendant Jennifer Rascoe ("Rascoe"), and (iii) replevin and possession of collateral against Image RX and Rascoe (collectively, "Defendants") based upon Defendants' alleged nonperformance under the terms of an Equipment Finance Agreement ("Agreement"). (*See generally* ECF No. 1.) Before the Court on referral from the Honorable Gary R. Brown, is Plaintiff's motion for default judgment wherein Plaintiff seeks (i) a money judgment on its breach of contract and breach of guaranty claims in the amount of $219,486.55 which is comprised of $214,114.54 in principal, late fees,

1

and default interest, attorneys' fees in the amount of $4,004.00, and costs in the amount of $1,368.01 and (ii) judgment on its replevin claim awarding possession of the collateral to Plaintiff. (ECF No. 10; ECF No. 10-8; 10-13.) For the reasons set forth below, the undersigned respectfully recommends that the District Judge **GRANT** Plaintiff's motion (ECF No. 10) and award the damages as set forth below.

## FACTUAL BACKGROUND

The following allegations are drawn from the Complaint. On or about May 20, 2023, Image RX entered into the Agreement with Me and My Pal, Inc. ("MMP"), under which MMP financed Image RX's purchase of one Emface Workstation (S/N No. 785F5B001084) (the "Collateral") for its use in its skin care treatment business. (ECF No. 1 at ¶ 7.) The Agreement required Image RX to make sixty (60) monthly payments of $4,799.79. (*Id.*) An Equipment Acceptance Certificate ("Acceptance Certificate") was executed by Rascoe on behalf of Image RX on May 20, 2023, acknowledging receipt of the Collateral. (*Id.* at ¶ 11.) That same day, Rascoe executed an Individual Guaranty (the "Guaranty") guaranteeing Image RX's performance and payment obligations, including reasonable litigation costs and attorneys' fees incurred in enforcing the Agreement or Guaranty. (*Id.* at ¶ 9.)

To secure repayment, Image RX granted MMP a first-priority security interest in the Collateral to ensure Image RX's obligations under the Agreement. (*Id.* at ¶ 8.) Plaintiff alleges that MMP properly perfected its security interest by filing a UCC-1 Financing Statement with the California Secretary of State on May 25, 2023. (*Id.* at ¶ 12.) Plaintiff further alleges that, by a Notice of Acknowledgment of Assignment of Loan dated June 29, 2023, Image RX was provided notice of the assignment of MMP's rights under the Agreement to Plaintiff. (*Id.* at ¶ 13.) On the same day, a UCC-3 amendment was filed with the California Secretary of State

removing MMP as the secured party of record and identifying Plaintiff as the secured party with respect to the Collateral. (*Id.* at ¶ 14.)

Plaintiff alleges that Image RX defaulted on its payment obligations under the Agreement by failing to make the installment payment due in February 2025 and by making no payments thereafter. (*Id*. at ¶ 18.) The Agreement provides remedies upon default, including late charges, acceleration, repossession, sale of collateral, and recovery of any deficiency, as well as reimbursement of enforcement costs and attorneys' fees. (*Id.* at ¶¶ 15-16.) As such, Plaintiff maintains that the amounts due under the Agreement were "accelerated by Plaintiff, with the entirety of the indebtedness being declared immediately due and payable." (*Id.* at ¶ 18.)

Accordingly, following Image RX's default and Plaintiff's acceleration of the indebtedness, Plaintiff commenced this action asserting claims for (i) breach of contract against Image RX, (ii) breach of guaranty against Rascoe, and (iii) replevin and possession of the Collateral against both Defendants. (*Id.* at ¶¶ 21-40.) Plaintiff's action properly sounds in diversity jurisdiction as Plaintiff is a limited liability company organized under the laws of New York whose sole member, Flagstar Bank, N.A., is a citizen of New York—making Plaintiff a citizen of New York—whereas Defendants are citizens of California as Image RX is a California corporation with its principal place of business in California, and Rascoe is an individual domiciled in California. (*Id.* at ¶¶ 4-6.) The amount in controversy also exceeds $75,000, exclusive of interest and costs. (*Id.* at ¶ 20.)

Plaintiff seeks a judgment awarding (i) money damages against Image RX for breach of the Agreement in the amount of $205,731.62, together with contractual interest, late charges, attorneys' fees, and costs; (ii) money damages against Rascoe for breach of the Guaranty in the same amount; and (iii) an order awarding Plaintiff immediate possession of the Collateral,

together with all attachments, accessions, replacements, and proceeds. (*Id.* at p. 8.) As of the date of Plaintiff's motion for default judgment, $219,486.55 remains due and owing under the Agreement and Guaranty inclusive of contractual interest, late charges, attorneys' fees, and costs, and that Defendants have failed to surrender possession of the Collateral. (*See* ECF No. 10-8.)

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on September 9, 2025 (ECF No. 1) and service as returned executed on October 23, 2025. (ECF Nos. 5-6.) Rascoe's answer was due on October 9, 2025 and Image RX's answer was due on October 10, 2025. (ECF Nos. 5-6.) Because neither Defendant answered the Complaint, the Court directed that Plaintiff either file a request for certificate of default or voluntarily dismiss the case on or before November 24, 2025. (Electronic Order dated October 24, 2025.) Plaintiff subsequently requested the entry of default on November 14, 2025 and the Clerk of Court entered a Certificate of Default against both Defendants on November 19, 2025. (ECF Nos. 8, 9.) The Court then directed Plaintiff to file its motion for default judgment in accordance with the Hon. Gary R. Brown's rules on or before December 19, 2025. (Electronic Order dated November 20, 2025.)

Plaintiff filed its motion for default judgment against both Defendants on December 12, 2025, seeking a money judgment on its breach of contract and breach of personal guaranty claims, as well as judgment on its replevin claim for possession of the Collateral. (*See* ECF No. 10.) On December 16, 2025, the Hon. Gary R. Brown referred Plaintiff's motion for default judgment to the undersigned for a Report and Recommendation. To date, Defendants have not appeared in this action.

The Complaint alleges that, as of September 9, 2025, Defendants owed $205,731.62 under the Agreement. (ECF No. 1 at ¶ 20.) Because the Agreement provides for the continued

accrual of late fees and default interest at a contractual rate of 18% per annum following default, the amount due increased after the filing of the Complaint. (*See id*. at ¶ 24.) Accordingly, in its motion for default judgment, Plaintiff seeks updated contract damages in the amount of $214,114.54, representing unpaid principal, accrued late fees, and default interest of 18% calculated through December 9, 2025. (ECF No. 10-8.) Plaintiff further seeks attorneys' fees in the total amount of $4,004.00 and costs and disbursements in the amount of $1,368.01, for combined fees and expenses of $5,372.01. Plaintiff submits documentation, including invoices, for these expenses and costs. (ECF No. 10-1 at ¶ 10; ECF No. 10-6; ECF No. 10-7.) In sum, Plaintiff seeks judgment in the amount of $219,486.55 as of December 9, 2025, inclusive of contract damages, attorneys' fees, and costs. (ECF No. 10-8.)

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.1(b) and 55.2. After the Clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2.

The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016). Given that the Clerk has already entered default against Defendants on November 19, 2025 (ECF No. 9), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Local R. 55.2. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,

5

973 F.2d 155, 158 (2d Cir. 1992). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## DISCUSSION

### I.    Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1)-(3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendant, (B) the movant has complied with the SCRA, and (C) that the defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local R. 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment have been personally served on or mailed to the defendant's residence or business address. E.D.N.Y. Local R. 55.2(a)(1)-(3). Recently added under the Local Rules, is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 521; *ADI Glob. Distribution v. Green*, No. 20- CV-

6

03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). The SCRA requirement is inapplicable as to Image RX, which is a corporate entity. (*See* ECF No. 1 at ¶ 6); *Bonilla v. Avery Cuisine LLC*, No. 23-cv-08320-NJC-JMW, 2025 WL 745906, at *3 (E.D.N.Y. Jan. 15, 2025), *report and recommendation adopted*, 2025 WL 559650 (E.D.N.Y. Feb. 20, 2025). As to Rascoe, Plaintiff satisfied the SCRA requirement by submitting an affirmation stating that Rascoe was not in military service at the relevant time, based on a Department of Defense Manpower Data Center search. (*See* ECF No. 10-15, Chubinidze Decl. at ¶¶ 3-5; *see also* ECF No. 10-16); *see McLaugulin v. Onanafe Management Solutions LLC*, No, 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *6 (E.D.N.Y. Sept. 14, 2024) (noting the SCRA requirement is complied with where plaintiff files a declaration stating that an individual defaulting defendant was not a member of the military after performing a search of the Department of Defense database).

Additionally, Plaintiff's motion complies with Local Rule 7.1 and Local Rule 55.2(a) because it includes (1) a notice of motion (ECF No. 10); (2) a memorandum of law (ECF No. 10-14); (3) affidavits and exhibits to support Plaintiff's contentions (*See* ECF Nos. 10-1, 10-3, 10-6, 10-7, 10-8, 10-12, 10-15, 10-17); and (4) a proposed order detailing the proposed judgment. (ECF No. 10-8; 10-13.) The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default against both defendants was entered by the Clerk of the Court on November 19, 2025 (ECF No. 10-5), as well as a declaration affirming that Rascoe is not a minor or incompetent person. (ECF No. 10-15.) Plaintiff also filed an affidavit of service of the requisite documents on Defendants via first class

mail. (ECF No. 10-17.) Accordingly, the Court finds that Plaintiff's motion for default judgment is procedurally proper and now turns to the merits of the motion.

## II.    Applying the Default Factors

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendants have wholly failed to appear and present any defense, and Plaintiff is left with no further steps to take to secure relief. *ADI Glob. Distribution*, 2023 WL 3355049, at *4.

## III.    Jurisdiction

### a.  Personal Jurisdiction

When a defendant fails to appear, "before a court grants a motion for default judgment it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "'preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.'" *ADI Glob. Distribution*, 2023 WL 3355049, at *3 (citation omitted). Here, a *sua sponte* assessment of personal jurisdiction is appropriate because Defendants have failed to appear in this action. *Id.*

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir. 2012).

As an initial matter, service was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Further, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A); (e)(1)) ("Under Rule 4(h)(1)(A), a corporation may be served 'in the manner prescribed by Rule 4(e)(1) for serving an individual,' which includes 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]'") Under New York law, service on a corporation may be made by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee" and "shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1). Here, Image RX was served on September 19, 2025, when the Summons and Complaint were personally delivered to an individual authorized to accept service on the corporation's behalf at its business address. (*See*

ECF No. 6.) Accordingly, service upon Image RX was proper under Rule 4(h).

Moreover, service on an individual defendant is governed by Fed. R. Civ. P. 4(e), which allows service by personal delivery or by leaving a copy of the summons and complaint at the defendant's dwelling or usual place of abode with a person of suitable age and discretion. Fed. R. Civ. P. 4(e)(2). Here, Plaintiff served Rascoe on September 18, 2025 by leaving the Summons and Complaint with a person of suitable age and discretion at Rascoe's residence and mailing a copy to the same address. (*See* ECF No. 5.) Accordingly, service upon Rascoe was proper under Rule 4(e).

Next, this action is predicated on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), as the action involves citizens of different states, and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a). "Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999)). Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendants in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Under New York law there are two routes for a court to exercise personal jurisdiction—general and specific. The undersigned considers each separately.

### i. General Jurisdiction

The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court noted that other than in "exceptional cases" the exercise

of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 177 N.E.3d 1257, 1265 (N.Y. 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Further, CPLR § 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are not only domiciled in New York, but also 'have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . 'do[ ] business' in [New York].'" *Delgado-Perez v. City of New York*, No. 17-CV-01194 (LTS), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 18, 2018) (citation omitted); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.")).

Here, Defendants are not domiciled in New York, but rather, in California. (ECF No. 1 at ¶¶ 5, 6.) Defendants, however, have consented to this Court's jurisdiction for any action or proceeding to enforce the Agreement and Guaranty or otherwise resolve disputes arising under these agreements. (*See* ECF No. 1 at ¶ 17; ECF No. 10-10, Ex. A, Agreement ("You submit to the jurisdiction of NY and agree that the state and federal courts sitting in Nassau County, New York, shall have the exclusive jurisdiction over any action or proceeding to enforce the EFA or any action or proceeding arising under this EFA."); ECF No. 10-11, Ex. B, Guaranty ("I agree that this Guaranty shall be interpreted in accordance with the laws and regulations of the State of New York . . . I concede and agree that I transacted business in the State of New York and I am subject to personal jurisdiction in the state and federal courts of the State of New York in any legal action, suit or proceeding regarding the Contract or this Guaranty.")). The Agreement further provides that Defendants "waive any objection based upon improper venue and/or forum non-conveniens." (ECF No. 10-10, Ex. A, Agreement).

11

Accordingly, the undersigned recommends a finding that the Court has "general jurisdiction" over Defendants. *See Flagstar Financial & Leasing, LLC v. ANR Logistics LLC*, No. 24-cv-08469 (JS) (JMW), 2025 WL 3451989, at *5-6 (E.D.N.Y. Oct. 28, 2025) (concluding the court had general jurisdiction over domiciliaries of Washington because they consented to this Court's jurisdiction in their respective agreements and guarantees), *report and recommendation adopted* (E.D.N.Y. Nov. 19, 2025).

### ii.  Specific Jurisdiction

On the other hand, specific jurisdiction is present when "a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *10 (S.D.N.Y. June 22, 2020) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). However, "[w]here general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state . . . ." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397 n.1 (S.D.N.Y. 2004). Here, the parties consented to this Court's jurisdiction in their agreements as discussed above. Therefore, having found general jurisdiction is present, a finding of specific jurisdiction is not required. *See Fifth App, LLC v. Alpha Modus Ventures, LLC*, No. 22-CV-06607 (DG) (PK), 2024 WL 4145225, at *7 (E.D.N.Y. Aug. 29, 2024) (internal citations omitted) ("[W]hen a defendant consents to personal jurisdiction in a forum selection clause, 'it is not necessary to analyze jurisdiction under an applicable long arm statute or federal constitutional requirements of due process.'").

### IV.   Liability

When a defendant defaults, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84. A

defendant's default is considered an admission of all well-pleaded allegations of liability. *See*

*Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Here, Plaintiff is alleging three claims: (i) breach

of contract, (ii) breach of personal guaranty, and (iii) possession of Plaintiff's Collateral. (*See*

*generally* ECF No. 1.)

To determine liability, the undersigned must first consider what law is to be applied.

Generally, a "federal court sitting in New York must apply New York's choice of law rules when

its jurisdiction is based on diversity." *ADI Glob. Distribution v. Green*, 2023 WL 3355049 at *5

(citing *Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, No. 16-CV-2696 (ILG), 2017

WL 2912452, at *2 (E.D.N.Y. July 6, 2017)) (quoting *Med. Research Assocs., P.C. v. Medcon*

*Fin. Servs.*, 253 F. Supp. 2d 643, 647 (S.D.N.Y. 2003)). However, "where the parties have

agreed to the application of the forum law—as evidenced by [the Agreement and Guaranty

together with other supporting documents] . . . —their agreement ends the choice-of-law

inquiry." *Barlow v. Gov't Emps. Ins. Co.*, No. 19-CV-3349 (PKC) (RML), 2020 WL 5802274, at

*3 (E.D.N.Y. Sept. 29, 2020) (citing *Bennett v. Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir.

2013)). Notably, the Agreement and Guaranty between Plaintiff and Defendant includes a

consent to jurisdiction provision, stating that all claims in relation to the Agreement and

Guaranty would be dealt with pursuant to New York law. (ECF No. 10-10; 10-11.) This indicates

that the parties intended for New York law to apply. Therefore, this analysis will proceed

accordingly under New York law.

### a. Statute of Limitations

Before addressing the merits of Plaintiff's claims, the Court must determine if the

Plaintiff brought its claims in a timely manner. *See Quintero v. Angels of the World, Inc.*, No.

19-cv-6126 (DG), 2021 WL 4464123, at *3 (E.D.N.Y. Sept. 10, 2021) (analyzing the statute of

limitations to ensure the causes of action were not time barred before delving into the merits of each), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021).

Under New York law, "breach of contract and guaranty claims are subject to a six-year statute of limitation." *KeyBank National Association v. Nour Limo, Inc.*, No. 22-CV-1894 (EK) (RER), 2023 WL 2969386, at *3 n.5 (E.D.N.Y. Feb. 2, 2023); *Movado Grp., Inc. v. Caseiko Trading Co.*, 912 F. Supp. 2d 109, 117 (S.D.N.Y. 2012) ("New York courts view guarantees . . . as separate obligations from those present in the underlying agreement, and thus, have held such guarantees to be subject to a six-year limitations period."). The statute of limitations "begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered." *Daisley v. FedEx Ground Package Sys., Inc.*, No. 08-CV-4063 (JG) (LB), 2008 WL 5083009, at *3 (E.D.N.Y. Dec. 1, 2008) (quoting *ABB Indus. Sys. Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997)), *aff'd*, 376 F. App'x 80 (2d Cir. 2010). Here, Plaintiff commenced this action on September 9, 2025 (ECF No. 1) and alleges that Image RX breached the Agreement by failing to make installment payments due beginning in February 2025 and continuously thereafter. (ECF No. 1 at ¶ 18.) Moreover, Plaintiff contends that Rascoe's alleged breach arose from Image RX's default beginning in February 2025, thereby triggering her obligations under the Guaranty. Accordingly, Plaintiff's breach of contract and guaranty claims are timely.

Additionally, under New York law, claims for replevin or recovery of chattels are subject to a three-year statute of limitations and accrues when a defendant refuses to return property that it once lawfully possessed but no longer does. *See Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 55 (N.D.N.Y. 2019) (citing CPLR § 214(3)). Here, Plaintiff alleges that although Defendants initially obtained lawful possession of the Collateral pursuant to the

14

Agreement, their continued possession became wrongful after Image RX's February 2025 default triggered Plaintiff's contractual right to immediate possession and Rascoe's duties under the Guaranty. (ECF No. 1 at ¶¶ 18, 38–40.) Because Plaintiff commenced this action within three years of the alleged wrongful detention, Plaintiff's replevin claim is timely. Accordingly, the undersigned finds that Plaintiff's claims are not barred by the applicable statutes of limitations.

### b.  Breach of Contract

Plaintiff asserts a breach of contract claim against Image RX based on its failure to make monthly payments pursuant to the Agreement which constitutes an event of default under the Agreement. (ECF No. 1 at ¶ 22.)

To state a claim for breach of contract under New York law, a party must show "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Waldorf v. Waldorf*, 201 N.Y.S.3d 241, 242 (N.Y. App. Div. 2d Dep't 2023); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (explaining that "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.")). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43 (N.Y. App. Div. 1st Dep't 2009); *see also Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021); *Express Indus. & Terminal Corp. v. New York State DOT*, 715 N.E.2d 1050, 1053 (N.Y. 1999) ("To create a binding contract, there must be a manifestation

of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.").

Here, the undersigned finds that Plaintiff has sufficiently established that Image RX failed to comply with its obligations to pay the debts owed and that Plaintiff otherwise met its contractual obligations, constituting a breach of contract. On May 20, 2023, MMP and Image RX entered into the Agreement wherein MMP financed Image RX's purchase of the Collateral and wherein Image RX agreed to pay MMP (including any assigns) in sixty monthly payments of $4,799.79. (ECF No. 1 at ¶ 7.) The Agreement reflects an offer to extend financing for Image RX's acquisition and use of the Collateral, and acceptance by Image RX through its execution of the Agreement and assumption of repayment obligations. (*Id.* at ¶¶ 7–8.) Shortly thereafter, on June 29, 2023, Plaintiff was substituted in as the secured party with respect to the Collateral. (*Id.* at ¶ 14.) Indeed, Plaintiff alleges that the rights under the Agreement were validly assigned to itself, that Image RX received notice of the assignment, and that Plaintiff became the secured party of record with respect to the Collateral. (*Id.* at ¶¶ 13-14.)

Under the express terms of the Agreement, an event of default includes, *inter alia*, "fail[ing] to pay any amount under the [Agreement] when due . . . ." (ECF No. 10-10, Ex. A, Agreement, "Default and Remedies"). As Plaintiff contends, Image RX failed to perform its duties under the Agreement because it ceased making monthly payments to Plaintiff in February 2025 and has failed to make any of the installment payments due thereafter, thereby placing Image RX in default under the Agreement. (ECF No. 1 at ¶ 18, ECF No. 10-10, Ex. A, Agreement.) Consequently, as of the filing of the Complaint, Plaintiff has suffered damages in the sum of $205,731.62 inclusive of late fees but exclusive of attorneys' fees and costs. (*Id.* at ¶¶ 20, 26-27.)

16

Therefore, the undersigned respectfully recommends that default judgment be entered as to Image RX's liability for Plaintiff's breach of contract claim. *See Flagstar*, 2025 WL 3451989, at *7 (granting default judgment on plaintiff's breach of contract claim where defendant failed to make monthly installment payments in accordance with the express terms of the parties' security agreement thereby resulting in monetary damages from defendant's non-payment).

## C. Breach of Guaranty

Plaintiff asserts a breach of guaranty claim against Rascoe for her failure to pay the debt owed by Image RX as an agreed-upon obligation under the Guaranty. (ECF No. 1 at pp. 6-7.)

Under New York law, "[a] guaranty is a promise to fulfill the obligations of another party" and is subject to "ordinary principles of contract construction." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 492 (2015); *Golden Bridge LLC v. 150-30 Ave Realty LLC*, No. 23-CV-09045 (NCM) (PK), 2025 WL 1548859, at *7 (E.D.N.Y. May 30, 2025). To establish liability for breach of guaranty, a plaintiff must show (1) the existence of a guaranty, (2) an underlying debt, and (3) the guarantor's failure to perform. *Golden Bridge LLC*, 2025 WL 1548859, at *7 (citation omitted); *ADI Glob. Distribution*, 2023 WL 3355049 at *5 (noting a plaintiff must show "an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee") (citing *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 672 F. Supp. 2d 409, 417 (S.D.N.Y. 2009)). Furthermore, if the "signed guaranty is unambiguous, there is no barrier to personal liability for a corporate debt." *ADI Glob. Distribution v. Green*, 2023 WL 3355049 at *5 (citing *Citibank, N.A. v. Uri Schwartz & Sons Diamonds, Ltd.*, 948 N.Y.S.2d 275, 279-79 (N.Y. App. Div. 2012)).

17

Here, taking the facts in the Complaint as true and after having reviewed the Guaranty, the undersigned finds that Plaintiff has sufficiently alleged facts that demonstrate a breach of Guaranty. The Guaranty explicitly provides that Rascoe:

> [P]ersonally, unconditionally and irrevocably guarantee [Image RX's] faithful performance and full performance of all Contract terms and conditions, including, without limitation, the payment of all money due and to become due under the Contract plus any and all of Creditor's costs (including reasonable attorneys fees and litigation costs) to enforce the Contract and/or this Guaranty.

(ECF No. 10-11, Ex. B, Guaranty.)

Plaintiff contends that Rascoe's obligations under the Guaranty were independent of Image RX's obligations and that she remained directly liable for all sums due under the Agreement. (ECF No. 1 at ¶¶ 9–10.) Indeed, Plaintiff alleges that Rascoe's obligations under the Guaranty were triggered by Image RX's default and acceleration of the indebtedness. (*Id.* at ¶¶ 18-19.) Notwithstanding her obligations to do so under the Guaranty, Rascoe failed to satisfy the debts owed to Plaintiff and is in default. (*Id.* at ¶¶ 19, 30-33); *see Citibank, N.A.*, 948 N.Y.S.2d (finding liability under an absolute and unconditional guaranty where the signer guaranteed repayment of any debts and failed to do so); *see also LG Funding, LLC v. Fla. Tilt. Inc.*, No. 15-CV-631 (PKC) (VMS), 2015 WL 4390453 (E.D.N.Y. July 15, 2015) (granting default judgment for breach of guaranty where a guaranty was signed to be liable for all debts and the debt owed was not paid). As of September 9, 2025, Rascoe remains liable for the accelerated balance due under the Agreement in the amount of $205,731.62, exclusive of attorneys' fees and costs. (ECF No. 1 at ¶¶ 20, 33-34.)

Therefore, the undersigned respectfully recommends that default judgment be entered as to Rascoe for breach of the Guaranty. *See Flagstar*, 2025 WL 3451989, at *8 (granting default judgment as to the breach of personal guaranty claim where defendants

failed to satisfy debts owed to plaintiff under the guaranties providing that defendants

"absolutely and unconditionally guarantee[d] the full and prompt payment when due of

all present and future obligations of Debtor to Creditor").

### D. Replevin / Possession of Collateral

Plaintiff asserts a cause of action for "Replevin/Possession" claiming that the

Agreement provides that in the event of default, Plaintiff may enter upon the premises where

the Collateral is located and take possession of the Collateral. (ECF No. 1 at ¶ 36.) Plaintiff

maintains that "the Collateral is being held, detained, and converted by Defendants in

contravention of the rights of Plaintiff." (*Id.* at ¶ 38.)

Under New York law, replevin is an action to recover possession of specific personal

property wrongfully held by another. *Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, 737

F. Supp. 3d 195, 207 (S.D.N.Y. 2024). To establish a claim for replevin, a plaintiff must

demonstrate: (1) a superior possessory right to the chattel; (2) that the defendant is in

possession of the property; and (3) that the defendant has wrongfully withheld the property by

refusing to return it upon the plaintiff's demand. *Bank of Am., N.A. v. Jacobi Tool & Die*

*M.F.G., Inc.*, No. 17-CV-6828 (SFJ)(AKT), 2019 WL 3553796, at *6 (E.D.N.Y. Aug. 5, 2019)

(explaining that replevin requires possession by the defendant and a superior right in the

plaintiff).

"Under New York law, an action for conversion and replevin should proceed under a

contract theory when the plaintiff is essentially seeking enforcement of a contractual duty."

*Aleem v. Experience Hendrix, L.L.C.*, No. 16 Civ. 9206 (ER), 2017 WL 3105870, at *5

(S.D.N.Y. July 20, 2017) (citing *Sommer v. Federal Signal Corp.*, 593 N.E.2d 1365, 1369

(N.Y. 1992)); *Usov v. Lazar*, No. 13 Civ. 818 (RWS), 2013 WL 3199652, at *7 (S.D.N.Y.

19

June 25, 2013) (finding where plaintiff alleged defendant had breached contract to provide plaintiff with profits from sale of diamond collection, plaintiff could not separately assert replevin claim because "Plaintiff does not allege any independent duty by Defendants outside of the purported contracts"). "Abstractly, a tort [like replevin] may accompany a breach of contract, but only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is also violated." *Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, No. 16-cv-6356 (FBF), 2017 WL 2963501, at *16 (S.D.N.Y. July 11, 2017) (citing *Luxonomy Cars, Inc. v. Citibank, N.A.*, 408 N.Y.S.2d 951, 954 (App. Div. 1978)).

It follows, therefore, that a claim for replevin will be dismissed as duplicative of a breach of contract claim where "an express contract" or "security agreement govern[s] the parties' obligations" as to the collateral subject to the replevin claim. *See Bank of America, N.A. v. Phone Traders, Inc.*, No. 17-cv-01358 (ENV) (AKT), 2019 WL 13236151, at *4 (E.D.N.Y. Aug. 21, 2019) (dismissing replevin cause of action where plaintiff made out a prima facie case for breach of contract governing the collateral at issue); *see Santander Bank N.A. v. Little Fat Trucking*, No. 23-cv-3425-DG-ST, 2024 WL 4664705, at *5 n.8 (E.D.N.Y. Sept. 9, 2024) (dismissing claims of account stated, foreclosure of a security interest, and replevin as duplicative where default judgment was entered on the breach of contract claim covering the collateral subject to the replevin claim); *see also Eastman Kodak Co. v. Berkshire-Westwood Graphics Grp., Inc.*, No. 09-CV-6185L, 2010 WL 2710975, at *2 (W.D.N.Y. July 6, 2010) (granting default judgment as to breach of contract claim but denying as duplicative the "alternate claims" including, *inter alia*, replevin); *see also Ascentium Capital LLC v. Full Speed Auto Group, Inc.*, No. 22-CV-7559-DG-SJB, 2023 WL 6168277, at *5

(E.D.N.Y. Aug. 28, 2023) (declining "to consider liability" under a cause of action for replevin where "the Court recommends default judgment be granted on the breach of contract claims"), *report and recommendation adopted* (E.D.N.Y. July 11, 2024).

Here, Plaintiff's claim for replevin stems directly from Image RX's breach of the Agreement by failing to remit monthly payments to Plaintiff. (ECF No. 1 at ¶¶ 36-37.) Pursuant to the express terms *under the Agreement*, upon breach by Image RX, Plaintiff's remedies included "peaceably repossess the [Collateral] without liability for trespass, and upon receipt of the Collateral, sell the Collateral at terms we determine [] and apply the net proceeds . . . to your payment obligations . . . ." (ECF No. 10-10, Ex. A, Agreement). Indeed, within Plaintiff's replevin claim, Defendants' duty to deliver the Collateral and the alleged damages stemming from Defendants' failure to deliver are directly derived from a purported contractual obligation flowing from Defendants to Plaintiff. As such, Plaintiff has failed to identify an "independent duty" to support its replevin claim, and, as such, the undersigned recommends dismissing the replevin claim as duplicative of the underlying breach of contract claim. *See Usov*, 2013 WL 2199652, at *7; *see Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*, No. 13 Civ. 1797 (KBF), 2014 WL 1316350, at *6 (S.D.N.Y. Mar. 28, 2014) (dismissing tort claim for replevin as duplicative of the breach of contract claim where the "Developer Agreement govern[ed] the delivery and ownership of the [collateral]" thus "preclud[ing]" the replevin claim, and directing that plaintiff include the argument that it is entitled to return of the software as a remedy on its breach of contract claim).

### V.        Damages

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well pleaded allegations, however, such default "is not

considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Here, Plaintiff requests a total sum of $219,486.55 in damages calculated through December 9, 2025 which is comprised of the following:

- Judgment on the breach of contract and guaranty causes of action in the amount of $214,114.54, consisting of principal, late fees, and default interest;

- Attorneys' fees in the amount of $4,004.00;

- Costs and disbursements in the amount of $1,368.01; and

- Such further relief as the Court deems just and equitable

(ECF No. 10-8.)

## A. Contractual Damages

"Under New York law, it is a 'fundamental principle' that an award of damages for breach of contract 'should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract.'" *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 736 (S.D.N.Y. 2018) (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)) (citation omitted). Indeed, "[i]t has long been established in New York that a breaching party is liable for all direct and proximate damages which result from the breach." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (citing *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)). "[T]hose damages that are the natural and probable consequence of the breach" are considered "general damages." *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 346 (S.D.N.Y. 2021) (quoting *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014)); *Powers v. Stanley Black & Decker, Inc.*, 137 F. Supp. 3d 358, 386 (S.D.N.Y. 2015) (internal marks omitted) (citations omitted).

22

"The Second Circuit explains that '[a] plaintiff is seeking general damages when he tries to recover the value of the very performance promised . . . .'" *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* 618 F. Supp. 2d 280, 292 (S.D.N.Y.2009) (quoting *Schonfeld v. Hilliard*, 218 F.3d 164, 175-176 (2d Cir. 2000)) (alteration in original).  It follows, therefore, that general damages are measured "by what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract." *Bell Semiconductor, LLC v. Broadcom Corp.*, No. 24-cv-156 (ER), 2024 WL 5118494, at *8 (S.D.N.Y. Dec. 16, 2024) (quoting *Latham Land I LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 151-52 (App. Div. 3d Dep't 2012)). "To prove general damages under New York law, the plaintiff must show (1) the fact or existence of damages to a 'reasonable certainty' and, if the fact or existence of damages is proven, (2) 'a "stable foundation for a reasonable estimate" [of damages] incurred as a result of the breach.'" *Holland Loader Co. v. FLSmidth A/S*, 769 F. App'x 40, 42 (2d Cir. 2019) (quoting *Tractebel Energy Mktg., Inc.*, 487 F.3d at 109). "The first prong concerns causation, while the second prong speaks to the amount of damages." *Id.* (citation omitted).

Here, Plaintiff seeks an Order awarding judgment in the amount of $214,114.54 for the remaining balance of the debt owed. This sum represents the original total of non-payment resulting from Defendants' obligations under the Agreement and Guaranty. Plaintiff supports this amount by attaching a declaration prepared by David McGowan ("McGowan") the Vice President and National Group Director of Portfolio Manager for Plaintiff, who has "personal access to and direct custody and control over records ... [and] personally reviewed the records with respect to the loans." (ECF No. 10-9 at ¶ 2.) The Declaration of McGowan outlines the debt owed as of December 9, 2025 ($214,114.54) inclusive of interest and late charges but

23

exclusive of reasonable attorneys' fees. (*Id.* at ¶ 17.) In addition, pursuant to the Agreement, amounts due following default accrue interest at a contractual default rate of 18% per annum, and Plaintiff has established that such default interest continues to accrue after December 9, 2025, at a per diem rate of $92.12. (*Id.*) Accordingly, the undersigned recommends awarding judgment in the amount of $214,114.54 in contract damages.

## B. Attorneys' Fees

Plaintiff seeks attorneys' fees in the amount of $4,004.00. (*See* ECF No. 10-8.) Pursuant to the explicit terms of the Agreement, Defendants are required to "reimburse [Plaintiff] for all costs [Plaintiff] incur[s] in enforcing [its] rights" including reasonable attorneys' fees, and under the clear terms of the Guaranty, Defendants agreed to "pay all of [Plaintiff's] costs of enforcement and collection, including reasonable attorneys' fees." (ECF No. 10-10, Ex. A, Agreement; ECF No. 10-11, Ex. B, Guaranty). Because the parties agreed these provisions upon the signing of the Agreement and Guaranty, Plaintiff is entitled to fees. However, the inquiry does not stop there because the Court must deem the requested fees reasonable. *See ADI Glob. Distribution*, 2023 WL 3355049, at *7.

To determine the reasonableness of an attorneys' fee award, "courts in the Second Circuit multiply the reasonable hourly rate by the number of hours reasonably expended by counsel," commonly referred to as the lodestar approach. *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (referencing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Board of Elections*, 522 F.3d 182, 183–84 (2d Cir. 2008)). "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and

24

the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. 10-cv-1737 (ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

Here, Plaintiff submits a declaration from its attorney, Mariam G. Chubinidze ("Chubinidze") and billing invoices which outline the tasks completed as well as hours spent and the respective hourly rates. (*See* ECF No. 10-1; ECF No. 10-6.) Specifically, the invoices reflect the time spent from September 2025 to November 2025 on this action including drafting and filing the complaint, coordinating service of process, seeking entry of default, and preparing the motion for default judgment. (*See* ECF No. 10-6.) These records reflect that Chubinidze and J. Logan Rappaport ("Rappaport") billed a total of 10.40 hours on this case each at an hourly rate of $385.00 resulting in a total attorneys' fees amount of $4,004.00. (*See id.*) Rappaport is a partner at Hinshaw & Culbertson who has been practicing in New York since 2007 with extensive experience in this practice area, *Flagstar*, 2025 WL 3451989 at *10, whereas Chubinidze is an associate at Hinshaw & Culbertson with over five years' experience in the same arena. (*See* ECF No. 10-1.)

Hourly rates in the Eastern District of New York, appear to "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience." *Perrone v. Amato*, No. 09-CV-316 (SIL), 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022); *see also Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *7 (E.D.N.Y. Feb. 5, 2025) (awarding an hourly rate of $450 for an experienced commercial litigator partner and noting "the reasonable hourly rate range for partners in the Eastern District from $300 to $450 to $450 to $650"); *Linde v. Arab Bank, PLC*, No. 04-CV-

2799 (BMC) (PK), 2023 WL 9232942, at *6 (E.D.N.Y. Nov. 28, 2023), *report and recommendation adopted*, No. 04-CV-2799 (BMC)(PK), 2024 WL 3873708 (E.D.N.Y. Aug. 19, 2024) ("prevailing rates for attorneys in the E.D.N.Y. are approximately $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates"). However, courts within this District have recently begun to recognize an increase in attorneys' fees hourly rates. *See Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025) ("I have rounded out the forum rates in the Eastern District to now be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals.").

Here, Rappaport's rate of $385.00 "is well within reason" for this District. *Flagstar*, 2025 WL 3451989, at *11 (awarding an hourly rate for J. Logan Rappaport of $385 per hour). The same holds true to Chubinidze's rate of $385.00 for an associate in the commercial litigation sector. *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20 CV 2073 (FB) (RML), 2023 WL 1072952, at *5 (E.D.N.Y. Jan. 9, 2023) ("Courts in this district have found $400 to be an appropriate rate for attorneys with commercial litigation experience in breach of contract cases."), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023). Accordingly, the undersigned finds that Plaintiff's request for attorneys' fees in the amount of $4,004.00 is reasonable and should be granted.

### C. Costs

Plaintiff seeks $1,368.01 in costs and disbursements incurred in connection with this action, specifically for service of process fees ($959.19), postage charges ($3.09), and the filing fee ($405). (ECF No. 10-6; ECF No. 10-7.)

In this Circuit, reasonable and identifiable out-of-pocket disbursements ordinarily

charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *see also OneWest Bank, NA v. Raghunath*, No. 14-cv-3310, 2015 WL 5772272, at *7 (E.D.N.Y. Sept. 8, 2015), *report and recommendation adopted sub nom.,* No. 14-cv-3310, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015). The party seeking to recover costs, however, "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (internal quotation marks and citation omitted). A party is not entitled to recover costs for which it provides inadequate substantiation. *See Douyon v. N.Y. Med. Health Care*, P.C., 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) (finding that without underlying documentation of itemized expenses, the Court has "no way of confirming" that costs were incurred by counsel); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

Here, Plaintiff provides documentary support for each process server invoice demonstrating payment of $329.73, $314.73, and $314.73 in attempting to serve Defendants in addition to $3.09 in postage charges. (*See* ECF No. 10-7 at pp. 3-5; ECF No. 10-6 at p. 10); *see also Arch Specialty Ins. Co.*, 2020 WL 6581000, at *7 (awarding process server fees where plaintiff provided invoices reflecting the payment of those charges); *Flagstar*, 2025 WL 3451989, at *12 (awarding $8.25 in postage fees as reflected in the billing invoices). Moreover, Plaintiff submits an invoice reflecting that it paid the $405 filing fee on September 9, 2025. (*Id.* at p. 2); *Philpot v. Music Times LLC*, No. 16CV1277 (DLC) (DF), 2017 WL 9538900, at *7 (S.D.N.Y. Mar. 29, 2017), *report and recommendation adopted*, No. 16CV1277 (DLC), 2017 WL 1906902 (S.D.N.Y. May 9, 2017) (a filing fee is "a fact of which the Court can take judicial notice"). Together, these documented amounts total $1,367.28, not

27

the requested $1,368.01. Accordingly, the undersigned recommends awarding Plaintiff $1,367.28 in costs.

### D. Pre-Judgment and Post-Judgment Interest

Plaintiff does not request pre-judgment interest in its application. Notwithstanding, under New York law, a "plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *K2M Design, Inc. v. Schmidt*, No. 22 Civ. 3069 (MKV) (GS), 2023 WL 10674525, at *9 (S.D.N.Y. Nov. 30, 2023), *report and recommendation adopted*, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024) (quoting *U.S. Naval Inst. v. Charter Comm'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)). In fact, the very language of N.Y. C.P.L.R. § 5001(a) states that prejudgment interest "*shall be recovered* upon a sum awarded because of a breach of performance of a contract." (emphasis added). "Section 5001 imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000); *see also Katzman v. Helen of Troy Tex. Corp.*, No. 12 Civ. 4220 (PAE), 2013 WL 1496952, at *2 (S.D.N.Y. Apr. 11, 2013) ("A long line of case law has held that prejudgment interest is mandatory" in breach of contract cases under New York law).

Indeed, "courts have awarded prejudgment interest in breach of contract cases even where plaintiff did not seek such relief in its complaint or at any point up through trial." *Schmidt*, 2023 WL 10674525, at *9 (awarding prejudgment interest on a motion for default judgment finding defendant in breach of the contract despite no demand for prejudgment interest being made); *Eastern Regional Medical Center, Inc. v. Battey*, No. 13 CV 7594 (VB), 2015 WL 1909851, at *4 (S.D.N.Y. Apr. 27, 2015) (adopting Report and Recommendation granting plaintiff's motion for default judgment on the breach of contract claim and awarding

28

prejudgment interest "[a]lthough plaintiffs [did] not explicitly request prejudgment interest" in their papers). Accordingly, the Court finds that an award of prejudgment interest is required even though Plaintiff's motion papers did not specifically seek such an award.

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract," NY CPLR § 5001(a) (McKinney), "up until and including the date of judgment, at nine percent per annum." *Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*, 314 F. Supp. 3d 534, 552 (S.D.N.Y. 2018), *aff'd sub nom.*, *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90 (2d Cir. 2019) (citing N.Y. C.P.L.R. § 5004); *HTV Industries, Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018). In New York, a claim for breach of contract accrues upon breach. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Therefore, "[t]he court should calculate pre-judgment interest 'from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made.'" *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 555 (E.D.N.Y. 2025) (adopting report and recommendation) (quoting N.Y. C.P.L.R. §§ 5001(b)–(c), 5004).

Here, Plaintiff contends that Image RX breached the Agreement by failing to make installment payments due beginning in February 2025 and continuously thereafter. (ECF No. 1 at ¶ 18.) Moreover, Plaintiff contends that Rascoe's alleged breach arose from Image RX's default beginning in February 2025, thereby triggering her obligations under the Guaranty. As such, February 28, 2025 is "a reasonable date to begin calculating pre-judgment interest for Plaintiff's breach of contract" and breach of Guaranty claim. *Prime Contractors Inc.*, 786 F. Supp. 3d at 556; *see also BASF Corp. v. Gabriel's Collision Norman Ave., Inc.*, No. 21-cv-1908 (ENV) (RER), 2022 WL 1407244, at *4 (E.D.N.Y. Jan. 12, 2022) (recommending that

pre-judgment interest should be calculated from December 31, 2019, where complaint alleged that defendant breached the agreement "in December 2019"), *report and recommendation adopted*. Accordingly, Plaintiff should be awarded pre-judgment interest on $214,114.54 calculated at 9% per annum from February 28, 2025 to date Judgment is entered.

Although Plaintiff does not request post-judgment interest, the award of post-judgment interest is mandatory pursuant to 28 U.S.C. § 1961(a), which applies to "any money judgment in a civil case recovered in a district court." "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Having found Plaintiff established liability for breach of contract and would be entitled to damages in the form of $214,114.54, the undersigned respectfully recommends a finding that Plaintiff be entitled to post-judgment interest from the date the Clerk of Court enters judgment until the date of payment at the statutory rate set forth in 28 U.S.C. § 1961.

## **CONCLUSION**

Accordingly, for the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment (ECF No. 10) be **GRANTED** and that the Court enter judgment as follows: (i) awarding Plaintiff contract damages in the amount of $214,114.54, consisting of unpaid principal, accrued late fees, and default interest through December 9, 2025; (ii) awarding Plaintiff attorneys' fees in the amount of $4,004.00; (iii) awarding Plaintiff costs and disbursements in the amount of $1,367.28; (iv) pre-judgment interest on $214,114.54 calculated at 9% per annum from February 28, 2025 to date Judgment is entered; and (v) post-

judgment interest from the date the Clerk of Court enters judgment until the date of payment.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon Defendants on or before March 9, 2026, and file proof of service of same on ECF. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York
         March 5, 2026

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

31